# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:12-cr-00209-TWP-TAB ) |
| JOSE COTA (01), and OSCAR GUTIERREZ (02), | ) ) ) |
| Defendants. | ) ) |

## ENTRY ON MOTION TO SUPPRESS

This matter is before the Court on Defendants' Jose Cota ("Mr. Cota") and Oscar Gutierrez ("Mr. Gutierrez") (collectively, "Defendants") Joint Motion to Suppress (Dkt. 45). Defendants challenge the search of their home and seizure of methamphetamine as a violation of the Fourth Amendment of the United States Constitution. Because there is a dispute concerning material facts, an evidentiary hearing on the motion was held on July 23, 2013. The Government appeared by Assistant United States Attorney William Lance McCoskey. Special Agent Daniel Schmidt attended as agent for the Government. Mr. Cota appeared in person, in custody, and by counsel Arturo Hernandez-M. Mr. Gutierrez appeared in person, in custody, and by counsel Lisa L. Wood and Paul M. Brayman. Both Mr. Cota and Mr. Gutierrez offered testimony. David Moxley was the Court Reporter. The Court heard arguments and took the matter under advisement. For the reasons set forth below, Defendants' Joint Motion to Suppress is **DENIED**.

## I. BACKGROUND

In addition to testimony presented by the Defendants, both parties offered facts in support of or in opposition to the Joint Motion via affidavit, declaration or other exhibits.

Based on the evidence received, the Court finds the following facts[1].

On November 13, 2012, numerous law enforcement officers, including an agent with the Drug Enforcement Agency ("DEA"), detectives with the Indianapolis Metro Drug Task Force ("Task Force"), and a certified narcotics canine named "Fletch", converged on a house located at 5908 Alpine Avenue, Indianapolis, Indiana. Days earlier, officers had received a tip from a confidential informant that Mr. Gutierrez was involved in drug trafficking and was residing at the Alpine Avenue address. When officers knocked on the front door, they observed movement within the house but received no response. Detective Sergeant Cline, a member of the Task Force, summoned Fletch and had him conduct an examination around the front door of the home for the scent of narcotics. Fletch gave a "positive indication" on the front door, meaning he detected the odor of a controlled substance. Law enforcement continued to knock, and after fifteen minutes of receiving no response they were instructed by the Marion County Prosecutor to enter and secure the home. Officers then forced open the door and entered the home to conduct a sweep for occupants.

Sometime either before or after law enforcement entered the home, Det. Sgt. Cline left to obtain a search warrant to conduct a search for narcotics[2]. In the Search Warrant Affidavit, Det. Sgt. Cline identified the confidential informant's tip, the knock and talk attempt, and Fletch's positive indication at the front door as bases for the warrant. A state court magistrate found

---

[1] Where the evidence in this case is disputed, the Court has determined the credibility of witnesses and assigned the weight to arrive at its findings of fact.

[2] According to the Probable Cause Affidavit completed by Det. Sgt. Cline (Dkt. 46-2), he went to obtain the search warrant following law enforcement's entry into the residence. However, the affidavit of Special Agent Daniel J. Schmidt of the DEA states that Det. Sgt. Cline left to apply for the search warrant prior to law enforcement's entry into the home. The Report of Investigation, also completed by Special Agent Schmidt, does not explicitly state that Det. Sgt. Cline left to obtain the search warrant prior to law enforcement's entry into the home, but Special Agent Schmidt included this fact after stating that detectives entered the residence. Dkt. 46-3 at 3. The Search Warrant Affidavit completed by Det. Sgt. Cline does not state whether law enforcement had or had not already entered and secured the home. Dkt. 46-1 at 3-4. Nevertheless, whether Det. Sgt. Cline left to obtain the search warrant before or after detectives entered the home does not make a difference in the Court's ruling for the reasons discussed in this Entry.

probable cause and issued a search warrant at 9:11 p.m. It is undisputed that officers had not yet obtained a search warrant at the time they entered the home and swept it for occupants. Upon entry, officers found Mr. Cota and Mr. Gutierrez, both of whom were tenants, in bed in separate rooms. Mr. Cota and Mr. Guiterrez were immediately handcuffed and taken into the kitchen of the home.

Neither of the Defendants gave consent for officers to search the home. Mr. Gutierrez's consent to search was never requested, and Mr. Cota explicitly denied law enforcement permission to search[3]. However, it is undisputed that the actual search did not begin until the warrant arrived back at the residence. While law enforcement was searching the home for narcotics, Francesca Garcia (also identified as "Ms. Gabby") ("Ms. Garcia") arrived at the residence and identified herself as the homeowner. Ms. Garcia consented to a search of her residence, however her consent is not material because by the time she arrived home law enforcement had already obtained the search warrant and was in the process of searching the residence. At some point during the search, Special Agent Schmidt found a black duffel bag containing methamphetamine in the attic above the garage. Both Defendants were charged, first in Indiana state court, and later in federal court, with conspiring to possess with the intent to distribute the methamphetamine.

## II. DISCUSSION

Defendants move to suppress all evidence gathered as a result of the search executed under the search warrant. They argue that law enforcement's use of a drug-sniffing dog to inspect the curtilage of their home constituted a search under the Fourth Amendment for which a

---

[3] Special Agent Schmidt claims that while law enforcement was waiting for the search warrant, Mr. Cota and Mr. Gutierrez gave him verbal consent to search the home; however Mr. Cota and Mr. Gutierrez deny that they ever gave consent. In addition, Det. Sgt. Cline made no mention of either Mr. Gutierrez's or Mr. Cota's alleged consent in his Probable Cause Affidavit, and no written consent-to-search forms were ever signed by the Defendants.

3

warrant was required, and failure to obtain a warrant beforehand requires suppression of the evidence found in the search of the home. They further contend the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The Court will examine each issue in turn.

A. **Was the search of the home a violation under the Fourth Amendment?**

The courts place special emphasis on protecting the sanctity of the home, and the Supreme Court has stated, "with few exceptions, the question of whether a warrantless search of a home is reasonable and hence constitutional must be answered no." *Kyllo v. United States*, 365 U.S. 27, 31 (2001). This protection also extends to the home's curtilage—the area immediately surrounding and associated with the home. *Oliver v. United States*, 466 U.S. 170, 178 (1984). The Fourth Amendment's protections of the home are also afforded to tenants in rented rooms. *Chapman v. United States*, 365 U.S. 610, 616-17 (1961).

The Government argues that, at the time of the search, a dog-sniff at the door of a residence was not considered a search within the Fourth Amendment, and the search warrant was obtained in good-faith reliance on binding appellate precedent. As such, the Government argues, law enforcement's reliance falls within the doctrine of the good-faith exception and exclusion of evidence is not the appropriate remedy. The Government does not dispute that on March 26, 2013, subsequent to the search of the Defendants' home and their arrests, the Supreme Court's issuance of *Florida v. Jardines*, 133 S.Ct. 1409 (2013), established that the employment of narcotics detection dogs to investigate the home and its immediate surroundings qualifies as a search within the meaning of the Fourth Amendment. Nor does the Government dispute that the use of "Fletch" qualifies as a search under *Jardines*. Instead, the Government argues that in this

case, *Jardines* does not require exclusion of the evidence because of the good-faith exception to the exclusionary rule.

The exclusionary rule is a judicially created sanction designed to deter police misconduct that violates the Fourth Amendment. "The sole purpose of the rule is to deter future Fourth Amendment violations;" it is not a personal constitutional right. *Davis v. United States*, 131 S.Ct. 2419, 2724; 2434 (2011). The rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *United States v. Leon*, 468 U.S. 897, 914 (1984). In *Leon*, the Supreme Court recognized that "[w]hether the exclusionary sanction is appropriately imposed in a particular case . . . is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." *Id.* at 906. The Supreme Court in *Leon* held that the exclusionary rule does not apply where police officers reasonably and in good faith relied on a warrant later found to be invalid. *Id.* at 922. In a line of cases subsequent to *Leon*, the Supreme Court held that the good-faith exception to the exclusionary rule applies when an officer conducts a search in reliance on binding appellate precedent. To conclude otherwise, the court reasoned, would be to penalize officers for the errors of appellate judges, and the rule would do nothing to deter inappropriate conduct. *Davis*, 131 S.Ct. at 2428-29. While newly announced rules of constitutional criminal procedure are applied retroactively to all pending cases, exclusion of evidence does not automatically follow from the fact that a Fourth Amendment violation occurred, and applies only where its purpose is effectively advanced. *Id.* at 2431.

Thus, the question of whether a search violates the Fourth Amendment and whether the courts should apply the sanction of exclusion are two separate inquiries. The facts of the *Jardines* case are very similar to this case. In *Jardines*, law enforcement officers used a drug-

sniffing dog on the front porch of the defendant's home to investigate an unverified tip that marijuana was being grown in the home. The Supreme Court determined that the curtilage of the home is a constitutionally protected area, and while there is a customary invitation that permits law enforcement to approach the front door and knock as any other private citizen might do, law enforcement does not have an invitation to bring "a trained police dog to explore the area around the home in hopes of discovering incriminating evidence." *Jardines*, 133 S.Ct. at 1416. Departing from their prior rulings which stated that investigation by a forensic narcotics dog cannot implicate any legitimate privacy interest because the dog could only detect the presence of contraband, and thus is not a search, the Supreme Court held that "[t]he government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." *Id.* at 1417-18. Therefore, based upon the standard articulated under *Jardines*, the use of a narcotics dog at the front door of Defendants' home constituted a search in violation of the Fourth Amendment.

**B.     Does the good faith exception apply?**

The determination that the dog-sniff at the door of Defendants' residence violated the Fourth Amendment is not the end of the Court's inquiry. The Court must next determine whether the principles under *Leon* apply, that is, does the good-faith exception apply to this search and make the exclusionary rule inapplicable. At the time of the search, the binding appellate precedent upon which the officers were permitted to rely stated that a dog-sniff of a home was not a Fourth Amendment search because "it detected only the presence of contraband and did not provide any information about lawful activity over which [the defendant] had a legitimate expectation of privacy." *United States v. Brock*, 417 F.3d 692, 696 (7th Cir. 2005); *see also Hoop v. State*, 909 N.E.2d 463, 468 (Ind. Ct. App. 2009) (citing *Brock*). Critical to the

6

holdings in *Brock* and *Hoop* was the fact that police were lawfully present in the area of the home where the dog-sniff occurred. *Brock*, 417 F.3d at 697; *Hoop*, 909 N.E.2d at 468. In *Hoop*, the Indiana Court of Appeals stated that "[t]he route which any visitor to a residence would use is not private in the Fourth Amendment sense" and police may lawfully approach a residence's front door using the walkway ordinarily used by any visitor. 909 N.E.2d at 468.

Relying on information of a confidential informant that Mr. Gutierrez was involved in drug trafficking and was residing at the Alpine Avenue address, officers were allowed to knock on the door of the residence. Importantly, under the prevailing law in November 2012, officers were not only lawfully at the front door of Defendants' home but at that time the dog stiff did not constitute a search under the Fourth Amendment. The officers, and the magistrate that issued the warrant, relied upon this precedent in good faith, and the purpose of the exclusionary rule would not be effectively advanced in this particular case. Thus, the exclusionary rule does not apply to suppress the narcotics seized in the subsequent search of the Defendants' home pursuant to the search warrant.

C.   **Was the officers' entry prior to obtaining the search warrant a Fourth Amendment violation?**

With regard to the officers' entry into the residence prior to obtaining a search warrant, the Seventh Circuit has stated that "officers who enter and seize a home to preserve the status quo while waiting for a search warrant do not commit an independently sanctionable violation of the Fourth Amendment so long as they had probable cause at the moment of entry and the seizure is not unreasonably long." *United States v. Etchin*, 614 F.3d 726, 734 (7th Cir. 2010) (citing *Segura v. United States*, 468 U.S. 796, 798 (1984)). If the officers had probable cause to believe they would discover evidence of a crime at the moment they knocked on the door, this would be enough to justify the temporary seizure of the residence while a search warrant was

7

being obtained. *Id.* at 735. Because the dog-sniff was not considered a search at the time, officers properly relied on the narcotics dog's positive indication as a basis for probable cause, thus they were justified in entering the Defendants' home in order to secure it. There is no indication that the officers performed a search prior to the arrival of the search warrant, and the warrant arrived within a reasonable time after they entered the residence. Therefore, the Court finds that law enforcement's entry into Defendants' home did not violate the Fourth Amendment.

### III.   CONCLUSION

For the reasons set forth above, the Defendants' Joint Motion to Suppress (Dkt. 45) is **DENIED**.

**SO ORDERED.**

Date: 08/23/2013

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Lisa L. Wood
LAW OFFICES OF PAUL M. BRAYMAN
lisa.l.wood@gmail.com

Paul M. Brayman
LAW OFFICES OF PAUL M. BRAYMAN
pmbrayman@rcn.com

Arturo Hernandez-M
Law Offices of Arturo Hernandez-M
artlawoff@aol.com

William Lance McCoskey
UNITED STATES ATTORNEY'S OFFICE
william.mccoskey@usdoj.gov

8